285 So.2d 199 (1973)
STATE of Louisiana
v.
G. L. GRAY.
No. 53590.
Supreme Court of Louisiana.
October 29, 1973.
Rehearing Denied November 30, 1973.
Carey J. Ellis, Jr., Ellis & Ellis, Rayville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Don K. Carroll, Dist. Atty., Lowen B. Loftin, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Gray was convicted of aggravated battery, La.R.S. 14:34, and sentenced to four years in the penitentiary. On his appeal, he relies upon one bill of exceptions.
The bill was reserved when the trial court denied the defendant's motion for a new trial. This black defendant grounds his motion on the state's systematic exclusion of Negroes from jury service.
In the present case, the state exercised three peremptory challenges to exclude three Negroes of the venire from service on the defendant's petit jury. The evidence also shows that the state used peremptory challenges to exclude all blacks from the petit juries in the two cases tried in the parish during the previous eight years which involved a black defendant and a white victim, as well as that no black jurors were chosen in the other two such cases tried during the period.
We do not find merit in the bill. In State v. Rossi, 273 So.2d 265, 266 (La. Sup.Ct.1973), we rejected a similar claim of discriminatory exercise by the state of its peremptory challenges and stated "* * * the motive for the exercise of peremptory challenges is not subject to judicial review and presents no constitutional issue of abuse." See also: State v. Smith, 263 La. 75, 267 So.2d 200 (1972); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Squire, 257 La. 743, 244 So.2d 200 (1971).
*200 In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court discussed at length the issue before us. In affirming the conviction the court held that the discriminatory exercise of peremptory challenges did not, in a particular case, deny the equal protection of the laws, having in mind the historic purpose of peremptory challenges.
The court further indicated, however, that the consistent and systematic exclusion of Negroes from petit jury service over a period of time "may well require a different answer." 85 S.Ct. 837. See: United States v. Pearson, 448 F.2d 1207 (CA 5, 1971); Geeslin, Peremptory Challenge Systematic Exclusion of Prospective Jurors on the Basis of Race, 39 Miss.L.J. 157 (1968).
Although the question is close, we do not believe we here reach the issue of systematic exclusion.
During the previous eight years, there were only thirteen jury trials in the parish. Negroes were selected on several of the petit juries involved. It is true that, of the four that involved black defendants and white victims, no black juror was chosen, but in only two of them was this due to the use of peremptory challenges by the state.
Considering that the record shows an increasing number of black petit jurors serving on criminal cases in recent years, and in the absence of a more concrete showing that the motive for the use of peremptory challenges was to enforce an invidious discrimination, we are not prepared to hold that the issue is presented to us by the present case solely on the basis of the two instances involved during the period in question.
The conviction and sentence are affirmed.
Affirmed.
SANDERS, C. J., concurs in the result.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
The defendant, Gray, a black man, was charged with committing aggravated battery upon a white man, tried before an all-white jury of five (C.Cr.Proc. Art. 782), convicted and sentenced to four years in the penitentiary.
Defendant's motion for a new trial, alleging a denial of due process and equal protection because of the State's systematic exclusion of blacks from the petit jury through peremptory challenges, was denied. The majority has found no merit in the bill of exceptions reserved to that denial. I am of the opinion the record made by the defendant supports his claim of denial of due process and equal protection through the State's long and continuous use of peremptory challenges to exclude all blacks from serving upon juries where a black is accused of an offense against a white in this jurisdiction.
I readily admit that there are no per se constitutional requirements surrounding the peremptory challenges of potential jurors. However, in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the United States Supreme Court loudly and clearly stated that there are constitutional limitations on the use of peremptory challenges. I acknowledge the much-stated principle that a defendant is not entitled to a particular juror in a case, but only to a fair and impartial jury. I also acknowledge that the constitution does not, per se, require that a particular member of a group or class be included in the petit jury. However, our constitution does guarantee equal protection and due process to every member of this society, without regard to his affiliation or attachment to a particular group or class of the citizenry. Over a period of years these constitutional rights, especially as they affect minority groups, have been heavily implemented by the United States Supreme Court. A legion of *201 cases, which need not be cited, have tried to preserve for minorities the right to be tried by a true peer group which would not exclude members of that particular minority class.
It must be admitted that there is overriding concern that no member of a minority group should stand trial in a court where there has been systematic exclusion of members of his group from jury service. The cases deal with the general venire, the grand jury venire, and the petit jury venire. after a strong recognition by the courts of the right of minority groups not to be systematically excluded from the venire lists has come a judicial realization that the rule against systematic exclusion from the venire does not necessarily protect the defendant's right to a trial by a jury panel of his peers. In case after case in our Court, and apparently in cases all over the country, attention has been called to the fact that, although minority groups were represented on the venire, the state, through exercise of the peremptory challenge, has effectively excluded minority groups from the actual trial panel. The rule previously upheld by the courts that there can be unrestricted and unquestioned use of the peremptory challenge has permitted the state to effectively deprive members of certain minority groups of an actual "cross-section" petit jury.
The majority in the Swain case were conscious of the problem, but were afraid to rest a determination of systematic exclusion from the petit jury panel attributable to the state upon the showing of systematic exclusion of a minority group in a particular case. It appeared to lay down two rules: (1) although the court would not expect an admission from the state of unbridled use of the peremptory challenge for the exclusive purpose of systematically excluding a group, such an admission in a particular case would suffice to establish violation of constitutional rights[*]; and (2) if the defense can overcome the almost insurmountable burden of proof and establish systematic exclusion of a particular group through the peremptory challenge over a long period of time, the state will be charged with reversible error in using the peremptory challenge to deprive the defendant of his constitutional rights of equal protection and due process.
In this particular case, of the forty persons chosen for the petit jury venire, seven were black. In Richland Parish, the jurisdiction where this case was tried, blacks form 41.5 per cent of the population. The venire for the selection of the jury panel contained 17.5 per cent blacks. Of the seven black jurors on the venire, three were excused prior to actual commencement of the trial by the court, leaving four possible black jurors for selection to the panel in the Gray case. During the selection of the five man jury, the State used three peremptory challenges. All three challenges were directed at blacks, i. e., all of, and the only blacks called for selection. No blacks were challenged for cause, the defense challenged no blacks peremptorily, and the court empaneled an all-white jury of five.
Counsel for defendant has meticulously made up a record to show that blacks have never been permitted to serve on a jury in a case where a black is charged with an offense against a white. (See Appendix) Counsel has precisely, abundantly and with great clarity shown that in every instance where necessary, the State has used the peremptory challenge to exclude blacks in such cases. The clerk of court of Richland Parish testified that he could not determine that any blacks had ever actually been drawn for petit jury service before October, 1965. On October 11, 1965 a black was charged with aggravated battery upon a white man. (See Appendix, No. 2) One black was excused for cause or on personal exemption, no black was peremptorily challenged and none served on the jury. On October 12, 1965 a five man jury was empanelled to try a black for arson of a house by a white. (See Appendix, No. 1) One black was excused for *202 cause or on personal exemption, no blacks were peremptorily challenged and no blacks served on the jury. Apparently, the same venire was used in both cases.
On October 11, 1971 a black was charged with the rape of a white woman (See Appendix, No. 3) In choosing a twelve man jury, one black was excused for cause or on personal exemption, five blacks were peremptorily challenged by the State, no blacks were challenged by the defense; no blacks served on that jury. Then, of course, in the present case, in choosing a five man jury, the State used three peremptory challenges to exclude all blacks from the jury. (See Appendix, No. 4)
In Swain v. Alabama, the United States Supreme Court determined under the particular record presented there that a showing had not been made that the prosecutor had systematically used peremptory challenges against Negroes over a period of time which was sufficient to establish that the striking of Negroes was a systematic discrimination against that race on the part of the state. The Court said:
"* * * This is not to say that a defendant attacking the prosecutor's use of peremptory challenges over a period of time need elicit an admission from the prosecutor that discrimination accounted for his rejection of Negroes, any more than a defendant attacking jury selection need obtain such an admission from the jury commissioners. But the defendant must, to pose the issue, show the prosecutor's systematic use of peremptory challenges against Negroes over a period of time. * * *" (Emphasis supplied)
If the defendant here has not met that burden of proof showing the State's systematic exclusion of blacks from juries, where blacks committed offenses against whites, and that this was purposeful in accomplishing a discriminating all-white jury, the test in Swain can never be met and the holding in that case stands for naught.
From the first occasion that blacks were permitted to serve on juries in Richland Parish, in every case where it has been necessary to use peremptory challenges to exclude blacks in these cases, the State has exercised peremptory challenges for that purpose. Moreover, in the trial before us, the only use made of peremptory challenges by the State was to exclude blacks. It cannot be held against the defendant that he has shown only these four instances since 1965, when these constitute the total instances where a "white on black" situation existed. There simply had been few jury trials in this jurisdiction.
In United States v. Pearson, 448 F.2d 1207 (1971), the Fifth Circuit held:
"* * * In the six years which have passed since Swain, we have not found a single instance in which a defendant has prevailed on this issue. Nonetheless, the burden is not insurmountable. * * *"
That court then concluded that one week of records was not sufficient to establish a systematic discrimination by the state through the use of the peremptory challenge. If the burden is not insurmountable, then this defendant certainly must prevail. He has exhausted the court records and has established beyond doubt that in Richland Parish it is impossible for a black to serve on a jury when a black is charged with an offense against a white. Those who are called to be a part of the petit jury venire, if called to be a part of the petit jury panel, have been purposefully excluded from sitting upon the case for the sole reason that they are members of the Negro race.
The case we have before us is a clear case of invidious discrimination through the purposeful exercise of the peremptory challenge to exclude blacks. Not only has restraint been lacking in this jurisdiction, this defendant has established purposeful long-time use of the peremptory challenge to a certainty.
*203 I respectfully submit that the strict requirements of Swain v. Alabama have been met to perfection in this case. I do not think that in every case the standard of Swain v. Alabama can solve the problems which are created through unbridled use of the peremptory challenge by the state against minority groups. If restraint is not exercised by the prosecution voluntarily, I feel sure a more workable and just standard will be designed by the United States Supreme Court. If the old concept of free exercise of the peremptory challenge is to live with the concept of equal protection and due process in jury trials, it must come through voluntary restraint by the state or there will be a realistic approach by the courts to protect constitutional guarantees from erosion and even eradication through use of a trial technique not constitutionally protected.
I respectfully dissent.

 APPENDIX
 EXHIBIT
 Petit Jury Cases - Richland Parish
 October, 1965 - March, 1973
 Negroes Negroes
 Negroes Excused Peremptorily Peremptorily Negroes
 Defendant Offense & Size of Date of for cause or charged by charged by served
Case No. (Name & Race) Nature of Case Jury Trial Personal Exemption State Defense on Jury Verdict
13,845 George Fountain Arson-house 5 10/12/65 1 0 0 0 Not Guilty
 (Negro) owned by white (1)
 man
14,088 Geo. Washington Aggravated 5 10/11/65 1 0 0 0 Guilty as Charged
 (Negro) Battery (with (2)
 knife upon a
 white man)
14,177 John "Buttermilk" Burglary of 12 10/11/65 0 1 0 0 Guilty
 Collins (Negro) a Negro dwelling
14,639 Russell Stephenson Attempted 12 10/10/66 0 1 0 0 Guilty of Attempted
 (White) Murder (of a Manslaughter
 white woman)
14,920 William Bersch Aggravated Rape 12 3/27/67 0 1 1 0 Guilty (without Capital
 (White) (of a White Punishment)
 woman)
16,294 William (Tobe) Theft of set of 5 3/24/69 0 0 0 0 Charge reduced to Attempted
 Goodman tools from a Theft and defendants plead
 Willie C. Austin White Man Guilty
 Monroe McDaniel
 (All White)
16,792 Calvin Travis Murder of his 12 10/14/69 1 0 0 5 Not Guilty
 (Negro) wife - Negro
16,793 William Perry Murder (of a 12 10/13-14/69 2 0 2 0 Guilty of Manslaughter
 Newell (White) Negro)
17,832 John E. Garland Murder (of his 12 3/23-25/70 3 7 0 3 Guilty as Charged
 (White) wife - White)
 (Reduced to
 Manslaughter)
18,559 Clarence E. Aggravated Kidnapping 12 10/13-16/70 6 2 3 1 Guilty without Capital
 Wilkerson & of 2 Punishment
 Bobby Joe Fabian peace officers
 (White) (White)
19,150 Abell Murder (of a 12 3/22-23/71 0 2 0 3 Guilty without Capital
 Straughter Negro man) Punishment
 (Negro)
19,780 Phillip Ray Aggravated Rape 12 10/11-12/71 1 5 0 0 Guilty without Capital
 Allen (Negro) (of a White woman) Punishment (3)
21,681 G. L. Gray Aggravated Battery 5 3/26/73 3 3 0 0 Guilty
 (Negro) (White man) (4)
 D1

NOTES
[*] See dissent in State v. Jack, 285 So.2d 204 (1973), No. 53,548 on our docket this day.