The opinion of the court was delivered by
McEnery, J.
The defendants were indicted jointly for murder, tried and convicted, and separate verdicts as to each returned by the jury, Nash guilty as charged, and Barnett guilty as charged without capital punishment. They were sentenced in accordance with the verdict, and appealed from the judgment.
Their defences are as follows:
I.
To the ruling of the court in setting the case for trial.
II.
To the ruling of the court in refusing motion for continuance.
III.
To the ruling of the court in refusing to let the witness, T. W. Tusten, testify before the jury as to the general reputation of the deceased, McOort, at Monroe, La.
*1139 IV.
To the ruling of the court in refusing to let P. W. Perry, one of the jury, testify on the motion for new trial; the said Perry having been offered as a witness by defendants to prove that when offered as a juror he was'asked as to his age, and that he answered that he was twenty-two years of age.
V.
To the ruling of the court in overruling motion for new trial.
VI.
To the ruling of the court in overruling the motion in arrest of judgment.
Exceptions 1 and 2 are controlled by the same principle and will be discussed together, as is done in defendants’ brief.
The rule of the District Court before which the defendants were tried is that the District Attorney has the exclusive right to fix eases, except where sufficient time is npt allowed the defendant to secure his witnesses.
On the 22d day of April, 1893, the first day on which cases on the calendar of the court were called under the rules for the purpose of being set down for trial, the District Attorney proposed and offered to fix the case of defendants for trial on the 25th of April following. The defendants objected on the ground that two important witnesses, residing in another State, would be present if the case was fixed at a later date; that there was not sufficient time to obtain their voluntary attendance, which was assured at a later period, and defendants had not the time to communicate with them and secure' their promised voluntary attendance.
The fixing of cases for trial by the court is a matter relating to its discipline, and, as we have often said, we will not interfere with this discipline unless a manifest wrong has been inflicted upon the defendants. From the statemenUof the trial judge we are satisfied that no such wrong has been inflicted upon the defendants. He says the absent witnesses were non-residents and could not be forced to appear by any process of his court.
It would be a most unusual proceeding to continue a case foi the purpose of allowing the defendants to communicate with absent witnesses to ascertain if their voluntary attendance could be obtained. Defendants in criminal cases could multiply absent witnesses at each *1140 succeeding term and impose upon the indulgence of the court, and thus indefinitely postpone the trial. But this is a matter, when the witnesses are beyond the jurisdiction of the court, for the exercise of discretion by the trial judge. There is no legal right for a case to be postponed on such a showing, and a refusal to grant the delay, even in a meritorious case, would not authorize us to review the discretion exercised by the trial judge.
He says the witnesses lived at points in Texas, from which they could reach the court in twenty-four hours, and that they could be reached by telegraph.
The defendants, as a matter of right, were not entitled to the delay, and we think the trial judge was fully justified in refusing to allow the delay, in the exercise of a discretion which, in such a case, was exclusively his, on the showing made by the defendants.
Por the reasons alleged in their protest defendants filed a motion for a continuance on the ground of the absence of these two alleged important witnesses. The reasons above stated will apply to the refusal to grant the continuance on account of the absence of these witnesses.
In the same motion it is alleged as a ground also for a continuance that two witnesses, who reside in Shreveport, material and important, were absent from said city, and that defendants had placed their names with the clerk of the court for the purpose of having them summoned. The facts which they expected to prove by said witnesses are detailed at length. Orisp, one of the witnesses, was in court during the trial and he was not placed on the stand. The trial judge stated this from his personal knowledge.
In respect to the facts expected to be proved by Bernstein, the absent witness, the trial judge .states that his testimony would be only cumulative; that several witnesses testified to the overt act of deceased, that he did make threats against the life of the accused Nash, and that he and his co-defendant were informed of these threats. But the evidence showed, to the satisfaction of the jury, that the deceased made no effort to carry these threats into execution. On this point the evidence was conflicting, but the trial judge says the jury rejected the testimony of an overt act by the deceased and accepted that of the witnesses who testified to the fact that the “ deceased was facing the bar counter, with his left side toward the front door of the saloon, when the accused entered by that door, and *1141 that immediately upon their entrance two pistol shots were fired by them, or one of them, at deceased, and that they saw no pistol in deceased’s hands, and no attempt by him to draw one.” These observations on the testimony, the trial judge says, are made for the purpose of showing that if he erred in refusing a continuance no injury was done the defendants, as they had through other witnesses and their own testimony the advantage which Bernstein’s testimony would have given them.
But we are of the opinion that the accused did not show due diligence in endeavoring to procure the attendance of Bernstein. On January 24, 1893, on motion of defendants, the case was continued. They had from this time on to the trial, to secure by legal process the attendance of Bernstein.
3. T. W. Tusten, a witness for the defence, was offered to prove the reputation of the deceased in Monroe, La., for being a dangerous and quarrelsome man, one who would likely carry his threats into execution. His testimony was rejected on the ground that it was not an effort to prove his character, where the deceased and accused resided, which would be a presumption that the accused knew his character.
To give the reputation of the deceased in evidence, which he bore in a distant community, it is necessary to show at least that the accused were aware of his character in said community. Ho attempt was made to show that the defendants knew the character deceased bore in the city of Monroe. Besides, the proof of some attempt on the part of deceased to commit an overt act against accused must be first shown as a foundation for such evidence.
4. P. W. Perry, a member of the jury, was placed on the witness stand by defendants to prove that when offered as a juror he was asked as to his age and answered that he was 22 years of age, when he was in fact only 20, and therefore an incompetent juror. The judge refused to admit his statement as a witness.
It is true that the evidence sought to be elicited from the witness was not to impeach the verdict, but we are of the opinion that the same rule will apply in rejecting such testimony as prevents the testimony of a juror to impeach the verdict rendered by him.
In case of State vs. Price, 37 An. 217, we said: The rule is of universal acceptance that jurymen will not be permitted to impeach their own verdict and thus declare their own perjury, for one oath *1142 would but offset the other. Both public decency and public policy alike demand the rejection of such testimony. In the instant case the juror’s oath, on the trial of the motion for a new trial, would be offset by his oath on his voir dire.
5. Evidence was introduced to show that the juror Perry was an incompetent juror, not having attained his majority. If the defendants had interrogated the juror Perry on his voir dire as to his age and he had deceived them by stating he was a major, this would be evidence of due diligence on part of defendants. If they had not so interrogated him, this would be a lack of diligence and a waiver of the cause of challenge. Thompson & Merriman on Juries, Sec. 802 et seq.; State vs. Garig, 43 An. 365.
If the fact had been shown conclusively on the trial of the motion that the witness had been questioned as to his age, then testimony could be heard as to his age, and if the fact of minority was proven, the defendants would be entitled to a new trial.
The testimony is conflicting as to whether*the juror had been interrogated as to his age.
The presumption is in favor of the juror’s competency, after he has been sworn and impaneled. To rebut this presumption the evidence must be strong and convincing. The trial judge believed that the question as to age had not been asked the juror, and he therefore overruled the motion for a new trial.
The trial judge says in his written opinion: “It can not be denied that defendants have, in the language of Bishop, failed to make it very distinct that the juror Perry was questioned as to his age before he was accepted.
“ It is not necessary to go into any examination of the evidence. It is admitted to be contradictory, and the admission might have gone to the extent of conceding tlíat it is flatly contradictory in some vital points — so contradictory, in fact, that no one can read it and be free of a reasonable doubt on the subject. It was the duty of defendants to remove these doubts, and as they have failed to do so, their application for a new trial must be denied.”
We can add nothing to the force of this statement. A disputed fact was submitted to him, and he has found the fact, and we will not, in a motion for a new trial in a criminal case, disturb his ruling in such a case.
*1143 The other matters in the motion have already been disposed of.
6. The motion in arrest of judgment assigns as a ground therefor the nonage of the juror Perry. This fact does not appear upon the face of the record. It also assigns as a reason for arresting the judgment ihe fact that one of the defendants was found guilty as charged, and the other guilty as charged without capital punishment.
They were jointly tried. The jury could have acquitted one and convicted the other. There is no reason why a qualified verdict could not be returned as to one, and an unqualified verdict as to the other.
The law authorizes such a verdict.
7. Two jurors were challenged for c'au^e by defendants, which was merited.- They were then peremptorily challenged. They did not serve on the jury, and the defendants have .no cause to complain. 35 An. 317; 35 An. 327; 37 An. 77; 36 An. 206; 37 An. 768.
Judgment affirmed.